# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ROBERTA CASDEN, Derivatively On Behalf of DANA CORPORATION and On Behalf of All Others Similarly Situated, | : : : : | Civil Action No. 3:06-cv-07068-JGC |
| Plaintiff, | : : | DERIVATIVE AND CLASS ACTION |
| | : | Chief Judge James G. Carr |
| vs. | : : | |
| MICHAEL J. BURNS, ROBERT C. RICHTER, RICHARD B. PRIORY, A. CHARLES BAILLIE, MARILYN R. MARKS, EDMUND M. CARPENTER, JAMES P. KELLY, CHERYL W. GRISE, SAMIR G. GIBARA, DAVID E. BERGES, RICHARD M. GABRYS, GLEN H. HINER, BENJAMIN F. BAILAR, ERIC CLARK, FERNANDO M. SENDEROS, and DANA CORPORATION, a Virginia corporation, | : : : : : : : : : : : : : | |
| Defendants. | : : | |

## DANA CORPORATION'S REPLY TO PLAINTIFF'S RESPONSE
## TO THE COURT'S APRIL 11, 2006 ORDER TO SHOW CAUSE

CORINNE BALL
RICHARD I. WERDER, JR.
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

HEATHER LENNOX
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PATRICIA J. VILLAREAL
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201-1515
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

JOSEPH P. THACKER
COOPER & WALINSKI
900 Adams Street
Toledo, Ohio  43624
Telephone:  (419) 249-0264
Facsimile:  (419) 720-3439

Attorneys for Defendant Dana Corporation

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.  Dana's Bankruptcy Filing Eliminated Plaintiff's Ability To Pursue Derivative
    Claims ......................................................................................................................... 3

    A.  A Corporation's Bankruptcy Filing Cuts Off Shareholders' Ability To
        Prosecute Derivative Claims .................................................................................. 3

    B.  Even If This Suit Is Not Dismissed Outright, It Must Be Stayed .......................... 7

    C.  The Board's Refusal Of Plaintiff's Demand Does Not Enable Her To
        Avoid The Automatic Stay ..................................................................................... 9

II. Plaintiff's Class Claims Should Also Be Dismissed Or, At A Minimum, Stayed ........... 11

    A.  The Purported Class Claims Must Be Dismissed Because Collateral
        Attacks On A Bankruptcy Filing Are Preempted By Federal Bankruptcy
        Law ......................................................................................................................... 11

    B.  The Purported Class Claims Are Repackaged Derivative Claims And
        Therefore Must Be Dismissed Or Stayed ............................................................. 13

CONCLUSION ..................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) ............................................................8

*In re Bailey*, 306 B.R. 391 (Bankr. D.D.C. 2004) .......................................................................7

*Bank Saderat Iran v. Zandi*, No. 94 CIV. 7229 (SHS), 1996 WL 337284 (S.D.N.Y. June 19, 1996) .......................................................................................................................10

*Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir. 1988) .....................................................4

*In re Bay Area Material Handling, Inc.,* No. C 95-01903, 1995 WL 747954 (N.D. Cal. Dec. 6, 1995).............................................................................................................7

*In re Betty Owens Sch., Inc.*, No. 96 Civ. 3576 (PKL), 1997 WL 188127 (S.D.N.Y. Apr. 17, 1997) ..........................................................................................................10

*In re Calvert*, 135 B.R. 398 (Bankr. S.D. Cal. 1991) ...................................................................9

*In re Charfoos*, 979 F.2d 390 (6th Cir. 1992)..............................................................................12

*Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037 (2d Cir. 1986)...................................................5

*In re Del-Met Corp.*, 322 B.R. 781 (Bankr. M.D. Tenn. 2005)......................................................4

*Delgado Oil Co. v. Torres*, 785 F.2d 857 (10th Cir. 1986) ...........................................................4

*In re Dwight*, Nos. CIV-91-982-R, CIV-91-1123-R, 1992 WL 105967 (W.D. Okla. Jan. 30, 1992) .......................................................................................................................7

*In re Eagle Enters., Inc.*, 265 B.R. 671 (E.D. Pa. 2001)..............................................................10

*In re Eagle-Picher Indus., Inc.*, 963 F.2d 855 (6th Cir. 1992) ......................................................9

*In re First Cent. Fin. Corp.*, 238 B.R. 9 (Bankr. E.D.N.Y. 1999)..................................................9

*In re Gainesville Venture, Ltd.*, 159 B.R. 810 (Bankr. S.D. Ohio 1993).......................................7

*In re Gen. Dev. Corp.*, 179 B.R. 335 (S.D. Fla. 1995) ...........................................................5, 10

*In re Gibson Group, Inc.*, 66 F.3d 1436 (6th Cir. 1995)............................................................6, 7

*Glannon v. Garrett & Assocs., Inc.*, 261 B.R. 259 (D. Kan. 2001) .............................................12

TABLE OF AUTHORITIES (continued)

**Page**

*Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987) ......................................................12

*In re HBA E., Inc.*, 87 B.R. 248 (Bankr. E.D.N.Y. 1988)..............................................12

*In re Interpictures, Inc.*, 86 B.R. 24 (Bankr. E.D.N.Y. 1988) ........................................8

*In re Keene Corp.*, 164 B.R. 844 (Bankr. S.D.N.Y. 1994)..............................................5

*Kennedy v. Venrock Assocs.*, 348 F.3d 584 (7th Cir. 2003), *cert. denied*, 541 U.S. 975 (2004) ..........................................................................................................................4

*Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115 (D. Md. 1995) ..............................12

*In re Latin Inv. Corp.*, 168 B.R. 1 (Bankr. D.D.C. 1993).................................................4

*MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir. 1996) ...................12

*Meyer v. Fleming*, 327 U.S. 161 (1946) ..........................................................................7

*Mitchell Excavators, Inc. by Mitchell v. Mitchell*, 734 F.2d 129 (2d Cir. 1984)...............5, 6, 7, 10

*Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004) .......................................5

*Pepper v. Litton*, 308 U.S. 295 (1939).............................................................................4

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000) .................................12

*Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279 (S.D.N.Y. 2003)............8

*In re Schepps Food Stores, Inc.*, 160 B.R. 792 (Bankr. S.D. Tex. 1993) .....................15

*Estate of Spirtos v. One San Bernardino County Superior Court Case Numbered SPR 02211*, 443 F.3d 1172 (9th Cir. 2006) ................................................................................5

*United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983)..............................................3

*WLR Foods, Inc. v. Tysons Foods, Inc.*, 869 F. Supp. 419 (W.D. Va. 1994) ...............15

*Walters v. First Tenn. Bank, N.A.*, 855 F.2d 267 (6th Cir. 1988) ...................................9

**STATE CASES**

*Adelman v. Conotti Corp.*, 213 S.E.2d 774 (Va. 1975) .................................................15

# TABLE OF AUTHORITIES (continued)

**Page**

*Big Lot Stores, Inc. v. Bain Capital Fund VII, LLC,* No. CIV. A-1081-N, 2006 WL
846121 (Del. Ch. Mar. 28, 2006) ........................................................................15

*Efessiou v. Efessiou*, 41 Va. Cir. 142, 1996 WL 1065637 (Va. Cir. Ct. 1996) ......................13, 14

*Glass v. Glass*, 321 S.E.2d 69 (Va. 1984)...................................................................15

*Keepe v. Shell Oil Co.*, 260 S.E.2d 722 (Va. 1979) ...................................................14

*Simmons v. Miller*, 544 S.E.2d 666 (Va. 2001) ........................................................4, 13

## DOCKETED CASES

*In re Dana Corporation, et al.*, Case No. 06-10354 (BRL)...........................................2

*Wang v. Bailar*, No. 3:06-cv-07038-JGC ..................................................................2

## FEDERAL STATUTES & RULES

11 U.S.C. § 105(a) ..................................................................................................12

11 U.S.C. § 362(a)(1)................................................................................................8

11 U.S.C. § 362(a)(3)....................................................................................1, 3, 7, 8, 9

11 U.S.C. § 541...............................................................................................3, 4, 5, 7

11 U.S.C. § 554..................................................................................................10, 11

11 U.S.C. § 1107(a) .................................................................................................3

Bankruptcy Amendments & Federal Judgeship Act of 1984, Pub. L. No. 98-353, sec. 441,
§ 362(a)(3) (1984)..................................................................................................9

Fed. Bankr. R. 6007 ................................................................................................11

## STATE STATUTES

Va. Code Ann. § 13.1-672.1 (2006)...........................................................................15

**TABLE OF AUTHORITIES (continued)**

**Page**

**MISCELLANEOUS**

3A William M. Fletcher, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 1278
(perm. ed. 2000 rev. vol.)....................................................................................14

3A William M. Fletcher, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 1282
(perm. ed. 2000 rev. vol.)....................................................................................14

12B William M. Fletcher, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5908
(perm. ed. 2000 rev. vol.)..............................................................................13, 14

12B William M. Fletcher, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5924
(perm. ed. 2000 rev. vol.)....................................................................................13

## PRELIMINARY STATEMENT

Dana's bankruptcy filing requires that the present action be dismissed, or, at a minimum, stayed. The Bankruptcy Code vests all property of the debtor, including derivative causes of action brought by shareholders, in the bankruptcy trustee or debtor-in-possession, and courts have repeatedly dismissed actions in which shareholders have attempted to prosecute derivative claims belonging to an entity in bankruptcy. Moreover, even apart from Plaintiff's lack of standing to maintain this action, the plain language of the Bankruptcy Code's automatic stay provision applies here. Section 362(a)(3) of the Bankruptcy Code, 11 U.S.C. § 362(a)(3), stays "any act" by Plaintiff "to exercise control over property of the [bankruptcy] estate," an estate that includes derivative causes of action.

Plaintiff's effort to circumvent this authority by arguing that Dana waived its right to assert the derivative claims directly is unavailing. It is well settled that a debtor-in-possession's mere failure to prosecute a claim does not allow a shareholder to prosecute a claim belonging to the estate absent an order from the bankruptcy court authorizing that to occur or authorizing abandonment of the claim. No such order has been entered here.

Finally, Plaintiff's assertion of purported class-action claims is nothing but a futile attempt at an end-run around the bankruptcy court: The assertion of state-law claims against individuals for choosing to put a corporation into bankruptcy is effectively a collateral attack on the bankruptcy, and as such is preempted by federal bankruptcy law. Moreover, the purported class claims are, in any event, simply repackaged derivative claims that must be dismissed or stayed.

## BACKGROUND

On March 3, 2006, Dana and 40 of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are jointly pending before the

Honorable Judge Burton R. Lifland in the United States Bankruptcy Court for the Southern District of New York, *see In re Dana Corporation, et al.*, Case No. 06-10354 (BRL).  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Before the Petition Date, on October 12, 2005 and November 29, 2005, the Plaintiff, Roberta A. Casden, sent Dana two demand letters requesting that Dana initiate legal action against the above-captioned individual defendants.  Plaintiff alleged that the Defendants harmed Dana by disseminating false and misleading statements regarding Dana's financial position.  In light of the investigation that had preceded Dana's restatement of earnings, Dana's independent, non-management directors, including its Audit Committee, considered the likely costs and benefits of litigation and determined that Plaintiff's claims lacked merit, and accordingly rejected her demand.

Thereafter, Plaintiff filed a complaint in this Court initiating the instant shareholder derivative action against Dana and the individual defendants.  Plaintiff filed her complaint on March 2, 2006 — the day before Dana filed for bankruptcy in response to liquidity pressures placed upon it due to substantial increases in commodity prices and well-publicized pressures in the U.S. auto industry.  On April 11, 2006, this Court entered an Order to Show Cause why Plaintiff's shareholder derivative action should not be stayed because of Dana's bankruptcy.  Plaintiff filed a response to that order on May 1, 2006.[1]

---

[1] As the plaintiff in *Wang v. Bailar,* No. 3:06-cv-07038-JGC, failed to respond to the Court's Order, that plaintiff should be deemed to have acceded to a stay, and, in any event, that case should be dismissed or stayed for the reasons given below.

2

## ARGUMENT

**I.    Dana's Bankruptcy Filing Eliminated Plaintiff's Ability To Pursue Derivative Claims**

Dana's bankruptcy filing mandates that the present action be dismissed, or, at a minimum, stayed.  The Bankruptcy Code vests all causes of action belonging to the debtor — including derivative causes of action — in the bankruptcy trustee or debtor-in-possession, and courts have repeatedly held that shareholders may not prosecute derivative claims belonging to an entity in bankruptcy.  Moreover, because the derivative claims brought by Plaintiff constitute property of the bankruptcy estate, and the Bankruptcy Code's automatic stay applies to "any act to . . . exercise control over property of the estate," 11 U.S.C. § 362(a)(3), any act by Plaintiff to prosecute her claim is automatically stayed.

**A.    A Corporation's Bankruptcy Filing Cuts Off Shareholders' Ability To Prosecute Derivative Claims**

A shareholder cannot prosecute a derivative action on behalf of a bankrupt company — or, at a minimum, cannot do so without special permission of the bankruptcy court — because the cause of action is part of the bankruptcy estate, and the filing of a bankruptcy petition vests all property of the estate in the exclusive possession of the bankruptcy trustee, or, where no trustee has been appointed, the debtor-in-possession.[2]

This conclusion is clear from both the plain language of the Bankruptcy Code and all relevant case law.  Under § 541(a)(1) of the Code, the "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case," 11 U.S.C. § 541(a)(1), including "'tangible or intangible property [and] *causes of action*'." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983) (emphasis added) (quoting

---

[2] *See* 11 U.S.C. § 1107(a) ("[A] debtor in possession shall have all the rights . . . of a trustee.").  Dana is a debtor-in-possession.

H.R. Rep. No. 95-595, at 367 (1977), S. Rep. No. 95-989, at 82 (1978), *reprinted in* 1978

U.S.C.C.A.N. 5868, 6323); *see also, e.g.*, *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441

(6th Cir. 1988) ("[I]t is well established that the 'interests of the debtor in property' include

'causes of action.'"); *In re Del-Met Corp.*, 322 B.R. 781, 818, 830 (Bankr. M.D. Tenn. 2005)

(same).

Thus, as the Fifth Circuit explained in *Delgado Oil Co. v. Torres*, 785 F.2d 857, 860

(10th Cir. 1986), a derivative action, as property of the estate, automatically vests in the

bankruptcy trustee:

> [T]he filing of the bankruptcy petition instantly alters the rights of
> a corporation and its creditors. As a general rule, and outside the
> context of a bankruptcy case, the fiduciary obligation of officers,
> directors, and shareholders is enforceable directly by the
> corporation or through a stockholder's derivative action. However,
> 'it is, in the event of bankruptcy of the corporation, enforceable by
> the trustee. . . .' *Pepper v. Litton*, 308 U.S. 295, 306-307 (1939)
> (citations omitted). The § 541 estate, thus, includes any right of
> action the debtor corporation may have to recover damages for
> misconduct, mismanagement, or neglect of duty by a corporate
> officer or director. The trustee in bankruptcy succeeds to that right.
> Its nature is derivative.

*Id.*; *see also, e.g., Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003) ("[I]f, as in

this case, the corporation is in bankruptcy, the [derivative] suit is an asset of the bankrupt

estate."), *cert. denied*, 541 U.S. 975 (2004); *In re Latin Inv. Corp.*, 168 B.R. 1, 4 (Bankr. D.D.C.

1993) (explaining that "causes of action . . . arising from breaches of fiduciary duty by the

corporate debtor's principals that could have been brought directly by the debtor or indirectly

through shareholder derivative suits" constitute "property of the debtor's estate").  Accordingly,

because a derivative action by a shareholder to enforce a corporation's rights "belongs to the

corporation rather than the shareholder," *see, e.g., Simmons v. Miller*, 544 S.E.2d 666, 674 (Va.

2001), the cause of action is a "legal or equitable interest of the debtor" within the meaning of § 541(a).

Because a derivative cause of action automatically vests in the trustee or debtor-in-possession, the courts have repeatedly held that a corporation's filing for bankruptcy "cuts off a shareholder's ability" to pursue a derivative claim. *In re Gen. Dev. Corp.*, 179 B.R. 335, 338 (S.D. Fla. 1995); *see also, e.g.*, *Estate of Spirtos v. One San Bernardino County Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1175 (9th Cir. 2006) (because the Bankruptcy Code vests trustee "with the exclusive power to raise legal claims on behalf of the [bankruptcy] estate," shareholder lacks standing to maintain derivative action); *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986) (explaining that the Bankruptcy Code precludes a shareholder from pursuing a derivative action "to enforce a right of the corporation when that corporation is in bankruptcy"); *Mitchell Excavators, Inc. by Mitchell v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) ("[W]hile normally the fiduciary obligation of officers, directors, and shareholders is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee.") (internal quotation marks omitted); *see also, e.g.*, *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (explaining that "only the trustee in bankruptcy has standing to pursue" a "pre-petition cause of action" on behalf of the debtor). This is true regardless of whether the plaintiff initiated the derivative action before or after the bankruptcy filing. *See, e.g.*, *In re Gen. Dev. Corp.*, 179 B.R. at 338; *In re Keene Corp.*, 164 B.R. 844, 853-54 (Bankr. S.D.N.Y. 1994).

Plaintiff responds that, notwithstanding § 541, "derivative claims may be brought by an interested party when the debtor-in-possession wrongly refuses that party's demand to bring an action." Plaintiff's Br. at 9. What Plaintiff fails to recognize, however, is that this may occur, if

at all, only in unusual cases, and only with the express permission of the bankruptcy court after a

cost-benefit and merit standard has been satisfied:  "[S]ome proceeding in the bankruptcy court

must take place before a shareholder can assert the right directly."  *Mitchell Excavators*, 734

F.2d at 132.[3]  Indeed, the very case Plaintiff cites for this proposition, *In re Gibson Group, Inc.*,

66 F.3d 1436 (6th Cir. 1995), was one in which the party at issue (properly) sought the

permission of the bankruptcy court to sue in the place of the debtor, *see id.* at 1438-39, and the

Sixth Circuit made clear that such a suit could only be brought under those circumstances "*with

the permission of the [bankruptcy] court*" and after the applicable threshold standards are

satisfied.  *Id.* at 1443 (citing *In re Automated Bus. Sys., Inc.*, 642 F.2d 642 F.2d 200, 201 (6th

Cir. 1981)) (emphasis added).  Plaintiff has not even attempted to obtain the permission of the

bankruptcy court or to show that it has satisfied the legal standards to prosecute the present suit.

Plaintiff also argues that, under Virginia law — irrespective of what bankruptcy law

requires — she has an unqualified right to pursue her derivative claims because she made a

formal demand on Dana Corporation's Board that was refused.  *See* Plaintiff's Br. at 8-9.  But as

the Second Circuit explained in rejecting the similar argument that a corporation's bankruptcy

filing "can[not] restrict [a plaintiff's] right under state law to bring a derivative action," the

"filing of [a] bankruptcy petition immediately alter[s] . . . the manner in which [a Corporation's]

rights c[an] be asserted."  *Mitchell Excavators*, 734 F.2d at 131.  Upon the filing of a petition, the

debtor's rights of action pass to the estate and become subject to the exclusive control of the

trustee or debtor-in-possession.  *See id.*  Moreover, it is undisputed that under Virginia law a

---

[3] Review by the bankruptcy court of whether prosecution of the suit is in the interests of the estate is
particularly appropriate in view of the determination by the independent, non-management directors and Audit
Committee of Dana that there is no merit to Plaintiff's allegations.

shareholder's "right" to bring a derivative action does not change the fact that the action is brought on behalf of (and belongs to) the corporation, not the individual shareholder.

Finally, Plaintiff's reliance on *Meyer v. Fleming*, 327 U.S. 161 (1946) (permitting shareholder to pursue derivative suit after bankruptcy filing), for the proposition that she "maintains a concurrent right, together with the debtor-in-possession ("DIP"), to pursue her action," Plaintiff's Br. at 10, is equally misplaced. "*Meyer v. Fleming* was a Bankruptcy Act decision which is not applicable to the Bankruptcy Code." *In re Bailey*, 306 B.R. 391, 395 (Bankr. D.D.C. 2004); *accord In re Dwight*, Nos. CIV-91-982-R, CIV-91-1123-R, 1992 WL 105967, at *4 (W.D. Okla. Jan. 30, 1992). Under the Code, unlike under the Act, "title to the debtor's property vests immediately in the estate" upon the filing of a bankruptcy petition, *In re Bailey*, 306 B.R. at 394, and cases like *Mitchell Excavators* (including Plaintiff's own case, *In re Gibson Group*) have repeatedly made clear that this vesting precludes any suit on behalf of the debtor by any third party without approval of the bankruptcy court.

**B.      Even If This Suit Is Not Dismissed Outright, It Must Be Stayed**

Even aside from Plaintiff's lack of standing to bring this suit on behalf of Dana, the plain language of the Code's automatic stay provision applies here. Under section 362(a)(3) of the Code, "any act" by any "entit[y]" to "exercise control over [the estate's] property" violates the automatic stay. 11 U.S.C. § 362(a)(3). As established above, the cause of action asserted here is plainly property of the estate, 11 U.S.C. § 541, and Plaintiff's prosecution of this lawsuit is an attempt to exercise control over that property. *See, e.g., In re Bay Area Material Handling, Inc.*, No. C 95-01903, 1995 WL 747954, at *6 (N.D. Cal. Dec. 6, 1995) ("[A] cause of action on behalf of the debtor brought by the debtor's shareholders is a violation of [section 362(a)(3)]" because it "wrongfully seeks to 'control' the debtor's claim, which is estate property."); *see also, e.g., In re Gainesville Venture, Ltd.*, 159 B.R. 810, 811 (Bankr. S.D. Ohio 1993) (explaining that

"[a]ny assertion of [a] claim [belonging to the debtor] by the shareholders through a derivative action would be an attempt to exercise control over property of the estate and, therefore, would violate the automatic stay imposed by 11 U.S.C. § 362(a)(3)"); *In re Interpictures, Inc.*, 86 B.R. 24, 28 (Bankr. E.D.N.Y. 1988) ("Any attempt . . . to exercise derivatively those rights which belong exclusively to the corporate debtor would run afoul of 11 U.S.C. § 362(a)(3) which prohibits 'any act to . . . exercise control over property of the estate.'") (second ellipsis in original).

This automatic stay of shareholder derivative actions furthers important bankruptcy policies.  It ensures "that the debtor's affairs will be centralized, initially, in a single forum," *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986) (internal quotation marks omitted); facilitates "an orderly and equitable distribution of the estate's assets," *Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279, 281 (S.D.N.Y. 2003); and provides both "the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor," *Robins*, 788 F.2d at 998.

Plaintiff's arguments to the contrary ignore the applicable law and the procedures imposed by the Bankruptcy Code to ensure an orderly administration of a debtor's estate. Overlooking section 362(a)(3) and apparently addressing 11 U.S.C. § 362(a)(1), which stays actions brought "*against* the debtor" (emphasis added), Plaintiff argues that the automatic stay of "litigation against the debtor do[es] not apply to actions against non-debtors" or to claims "brought by the debtor."  Plaintiff's Br. at 6-7.  However, Plaintiff makes no effort to address the more relevant subsection, section 362(a)(3) — which, independently of section 362(a)(1),

prevents shareholders from "exercis[ing] control" over causes of action *belonging to* the debtor

corporation — and none of the cases she cites involves that subsection.[4]

Indeed, the only one of Plaintiff's automatic stay cases that even tangentially addressed a

third party's attempt to prosecute an action on behalf of a debtor, *Walters v. First Tennessee*

*Bank*, *N.A.*, 855 F.2d 267 (6th Cir. 1988), did so only in *dicta* (as the court held that the relevant

argument had been waived) and discussed only section 362(a)(1). *See id.* at 271. Section

362(a)(3) was never raised, and *could not* have been raised, because the relevant statutory

language — applying the automatic stay to any act "to exercise control over the property of the

estate" — was not added until 1984, *see* Bankruptcy Amendments & Federal Judgeship Act of

1984, Pub. L. No. 98-353, sec. 441, § 362(a)(3) (1984), four years after the bankruptcy filing in

*Walters*. *See Walters*, 855 F.2d at 271 (debtor filed for bankruptcy protection in 1980). In

short, Plaintiff has no response to the clear applicability of section 362(a)(3).

**C.     The Board's Refusal of Plaintiff's Demand Does Not Enable Her To Avoid
         The Automatic Stay**

Plaintiff's attempt to circumvent the automatic stay by arguing that Dana waived or

abandoned its right to assert the derivative claims directly, Plaintiff's Br. at 10-11, is also

unavailing. While a debtor-in-possession "may surrender its exclusive right" to control "the

estate's legal claims if it voluntarily abandons them," a debtor-in-possession's mere failure to

prosecute a claim does not allow a shareholder to prosecute a claim belonging to the estate

---

[4] Even section 362(a)(1), moreover, may extend to an action against "non-debtor officers and directors" where the action, if allowed to proceed, would "pose a serious threat to a corporate debtor's reorganization efforts," *In re First Cent. Fin. Corp.*, 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999), such as by "divert[ing] key employees from the debtor's reorganization effort." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 860 (6th Cir. 1992) (internal quotation marks omitted). In addition, the debtor is a nominal defendant here, and this may be an action "against the debtor" under section 362(a)(1) on that basis, as well. *See In re Calvert*, 135 B.R. 398, 403 (Bankr. S.D. Cal. 1991) (noting that statements to the contrary in *Walters v. First Tenn. Bank, N.A.*, 855 F.2d 267, 270-71 (6th Cir. 1988), were *dicta*).

absent an order from the bankruptcy court authorizing abandonment. *In re Gen. Dev. Corp.*, 179 B.R. at 339.

Numerous courts have explained that a debtor-in-possession's failure to prosecute a claim belonging to the estate does not permit a third party to pursue the claim without, at a minimum, "first petitioning the bankruptcy court for an order authorizing abandonment of the property." *Id.* at 340 (internal quotation marks omitted); *see also, e.g.*, *Mitchell Excavators*, 734 F.2d at 132 ("[S]ome proceeding in the bankruptcy court must take place before a shareholder can assert [a derivative] right directly."); *Bank Saderat Iran v. Zandi*, No. 94 CIV. 7229 (SHS), 1996 WL 337284, at *1 (S.D.N.Y. June 19, 1996) (rejecting derivative claim brought by shareholder on behalf of bankruptcy corporation where the record did not show that the shareholder "petitioned the court to compel the trustee to either assert or abandon the claim"). The debtor-in-possession "cannot abandon a legal claim merely by failing to prosecute it, whatever its reason may be for not doing so." *In re Gen. Dev. Corp.*, 179 B.R. at 340; *see also, e.g.*, *In re Eagle Enters., Inc.*, 265 B.R. 671, 679 (E.D. Pa. 2001) ("A failure to pursue a particular claim by a trustee or debtor-in-possession . . . does not amount to abandonment of the claim."); *In re Betty Owens Sch., Inc.*, No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *3 (S.D.N.Y. Apr. 17, 1997) (rejecting the argument that the debtor-in-possession "constructively abandoned the causes of action [belonging to the estate] by failing to prosecute them").

Thus, even if this suit can be prosecuted in the face of the Board's rejection of Plaintiff's demand — an issue not presented here — Plaintiff cannot claim it has been abandoned by the debtor without a determination by the bankruptcy court. This requirement of petitioning a bankruptcy court for an order of abandonment is codified in the Bankruptcy Code. *See* 11 U.S.C. § 554 (permitting a debtor-in-possession to voluntarily abandon property of the estate

*after notice and a hearing*, and permitting an interested party to petition the court for a hearing on whether property of the estate should be abandoned); *see also* Fed. Bankr. R. 6007.  Any "property of the estate that is not abandoned" in accordance with the requirements of section 554 "remains property of the estate."  11 U.S.C. § 554(d).

Plaintiff — again invoking state law and ignoring the effect of the Bankruptcy Code — argues that the Board's refusal of her demand constitutes a waiver that allows her to maintain her derivative claims.  Absent an order by the bankruptcy court authorizing abandonment, however, the debtor-in-possession's failure or refusal to prosecute a claim belonging to the estate does not allow Plaintiff to treat it as abandoned.

## II.     Plaintiff's Class Claims Should Also Be Dismissed Or, At A Minimum, Stayed

Plaintiff's assertion of purported direct (non-derivative) class-action claims against Dana officers and directors is nothing but an attempted end-run around the bankruptcy court, and it fails for two reasons:  First, the assertion of state-law claims against individuals for choosing to put a corporation into bankruptcy is effectively a collateral attack on the bankruptcy, and as such is preempted by federal bankruptcy law.  Thus, Plaintiff's state-law class-action claims should be dismissed.  Second, the purported class claims are not individual claims but instead are simply repackaged derivative claims, and therefore should be dismissed or stayed for the reasons already described above.

### A.     The Purported Class Claims Must Be Dismissed Because Collateral Attacks On A Bankruptcy Filing Are Preempted By Federal Bankruptcy Law

Plaintiff's state-law class-action claims must be dismissed because they amount to an impermissible collateral attack on a bankruptcy filing and are therefore preempted by federal bankruptcy law.  Any state-law liability based on a decision to file for bankruptcy would impose a serious deterrent to use of the bankruptcy process created by Congress, and "would be

inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating."[5]  *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987) (affirming vacatur of state-court judgment on abuse-of-process claim alleging improper bankruptcy filing); *see also Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 426 (6th Cir. 2000) ("Permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve."); *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996) ("[T]he highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from . . . state malicious prosecution actions."); *Glannon v. Garrett & Assocs., Inc.*, 261 B.R. 259, 263 (D. Kan. 2001) ("[T]he Bankruptcy Code permits no state law remedies for abuse of the bankruptcy provisions."); *Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115, 125-26 (D. Md. 1995) (stating that "allowing the common law causes of action [alleging bad-faith bankruptcy filing] to go forward would frustrate the congressional purpose in enacting the federal scheme" under the Bankruptcy Code, and thus holding that state-law tort claims for malicious prosecution and abuse of process brought against creditor for alleged bad-faith filing of involuntary bankruptcy petition were barred).  "[I]t is for Congress" acting through federal law — not for state legislatures — "to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized."  *Gonzales*, 830 F.2d at 1036.

---

[5] By contrast, the availability of a claim *in bankruptcy court* based on a bad-faith filing is well recognized. *See In re Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992) ("It is well-settled that even though Chapter 11 does not expressly so state, bad faith may serve as a ground for dismissal of a petition."); *In re HBA E., Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988) (stating that the "implicit good faith Chapter 11 prerequisite has been consistently upheld by the courts" and citing cases).  Moreover, a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate . . . to prevent an abuse of process."  11 U.S.C. § 105(a).

**B.   The Purported Class Claims Are Repackaged Derivative Claims And Therefore Must Be Dismissed Or Stayed**

Even if not preempted, Plaintiff's purported class claims are derivative claims under Virginia law, and as such belong to the corporation and must be dismissed or stayed.  In distinguishing between shareholder individual and derivative claims against a corporation's officers and directors, Virginia law looks to whether the harm is to a distinct group of shareholders or whether it is to the corporation and to undifferentiated shareholders as a whole.[6] *See Simmons*, 544 S.E.2d at 674.  Where the harm is to the corporation and to undifferentiated shareholders as a whole, Virginia law follows "the overwhelming majority rule" that the action "cannot be maintained by a shareholder on an individual basis and must be brought derivatively." *Id.*; *see also Efessiou v. Efessiou*, 41 Va. Cir. 142, 149, 1996 WL 1065637 (Va. Cir. Ct. 1996) ("The test of a derivative action is whether a recovery would benefit the corporation generally and all shareholders or only an individual or a determinative group or class of individuals."); 12B William M. Fletcher, Cyclopedia of the Law of Private Corporations § 5924, at 497 (perm. ed. 2000 rev. vol.) ("A shareholder ordinarily cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, negligence or the like, on a cause of action which belongs to the corporation.").

For instance, "'wrongs committed against the corporation by the officers and directors in the management of corporate affairs'" must be brought derivatively, not as individual suits. *Simmons*, 544 S.E.2d at 674 (quoting 12B Fletcher, *supra*, § 5924, at 497–99); *see also Efessiou*, 41 Va. Cir. at 149 (holding that claims to set aside the actions of illegally structured Board of

---

[6] The class-action nature of a shareholder action is irrelevant to whether the action is individual or derivative.  *See* 12B William M. Fletcher, Cyclopedia of the Law of Private Corporations § 5908, at 431 (perm. ed. 2000 rev. vol.) ("The incidents and characteristics of derivative and class actions are quite different.").

Directors meeting, including the illegal issuance of stock, and for monetary damages resulting from those actions, "in effect enforce the rights of all shareholders" and thus could not proceed as individual actions against the directors).  Likewise, diminution in the value of shares does not support a direct shareholder action against the officers and directors.  *See Keepe v. Shell Oil Co.*, 260 S.E.2d 722, 724 (Va. 1979) (stating that "a stockholder has no standing to sue in his own right for an injury to the corporation on the ground [that] the injury caused a depreciation in the value of his stock," and that the remedy is instead by derivative suit); *see also* 3A Fletcher, *supra*, § 1282, at 403 ("Individual shareholders cannot sue the officers at law for damages . . . because mismanagement has rendered their stock of less value or worthless.  The injury is not individual, but to the corporation — the shareholders collectively.").  In contrast, "claims that a proposed merger, recapitalization, redemption, or similar transaction unfairly affects minority shareholders," 12B Fletcher, *supra*, § 5908, at 437 (footnote omitted), or claims that certain shareholders "purchase[d] stock in reliance on false representations of directors or other officers," 3A Fletcher, *supra*, § 1278, at 399, allege differentiated harm and may support an individual action.

Here, Plaintiff alleges no harm differentiated from that of other shareholders, and she is therefore limited to pursuing her claims in a derivative action.  Plaintiff alleges that the decision of Dana's directors and officers to file a bankruptcy petition injures Plaintiff and the proposed class because the bankruptcy proceeding may insulate the directors and officers from liability to the putative class members and reduces the value of the Corporation's stock.  *See* Verified Amended Shareholder Derivative and Class Complaint ("Compl.") ¶¶ 1, 169–85.  Such allegations of harm undifferentiated among the shareholders present the classic derivative suit.  *See, e.g.*, *Keepe*, 260 S.E.2d at 724; *Efessiou*, 41 Va. Cir. at 149.  Likewise, Plaintiff's assertion

(raised expressly for the first time in her brief in response to this Court's order to show cause) of being assigned an inferior status in bankruptcy is simply another way of complaining about the reduction in the value of *all* of Dana's shares.  *See* Plaintiff's Br. at 15.  The fact of a bankruptcy filing does nothing to change the undifferentiated nature of that alleged harm.  *See, e.g.*, *In re Schepps Food Stores, Inc.*, 160 B.R. 792, 796 (Bankr. S.D. Tex. 1993) (concluding that shareholders could not proceed with class action against directors, where allegations complained of harm to all shareholders in that directors, in bankruptcy proceeding, "enable[d] confirmation of a [reorganization] plan which forgave millions of dollars of debt owed by the Directors themselves").

The cases that Plaintiff cites are not to the contrary, as none of them addresses allegations that directors and officers breached fiduciary duties by wrongfully declaring bankruptcy, and none suggests that a direct claim is available when an alleged wrong affects all shareholders equally.  *See* Plaintiff's Br. at 14 (citing *Glass v. Glass*, 321 S.E.2d 69, 74 (Va. 1984); *Adelman v. Conotti Corp.*, 213 S.E.2d 774 (Va. 1975); *WLR Foods, Inc. v. Tysons Foods, Inc.*, 869 F. Supp. 419, 421 (W.D. Va. 1994)).

In short, Plaintiff "cannot . . . upset the structured bankruptcy process" by "erroneously characteriz[ing] various derivative claims as direct, in the hope of escaping the broad jurisdiction of the bankruptcy court and the proceedings therein."  *Big Lot Stores, Inc. v. Bain Capital Fund VII, LLC*, No. CIV. A-1081-N, 2006 WL 846121, at *1 (Del. Ch. Mar. 28, 2006).  Like her other derivative claims, Plaintiff's class claims are property of the bankruptcy estate.[7]

## CONCLUSION

Plaintiff's claims should be dismissed or, at a minimum, stayed.

---

[7] In addition, as Plaintiff failed to make the necessary demand for pursuing these claims in a derivative action, her allegations here are premature.  *See* Va. Code Ann. § 13.1-672.1 (2006).

Dated: June 1, 2006
      Toledo, Ohio

Respectfully submitted,


/s/ Heather Lennox
CORINNE BALL
RICHARD I. WERDER, JR.
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

HEATHER LENNOX
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

PATRICIA J. VILLAREAL
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201-1515
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

JOSEPH P. THACKER
COOPER & WALINSKI
900 Adams Street
Toledo, Ohio  43624
Telephone:  (419) 249-0264
Facsimile:  (419) 720-3439

ATTORNEYS FOR DEFENDANT DANA
CORPORATION